UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| BRADLEY PEEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:18-cv-00256-AGF |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Bradley Peel was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner will be affirmed.

### BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Material Facts (ECF No. 13-1) and Defendant's Statement of Additional Facts (ECF No.

---

[1] After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

18-2).[2]  Together, these statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff was born on September 29, 1965, and previously worked as a pipefitter.  He originally filed an application for disability insurance benefits on June 11, 2012, alleging an onset date of December 6, 2011, due to neck pain and anxiety.  An ALJ denied that claim on March 7, 2014 (Tr. 58), and the Appeals Council denied review on June 2, 2015 (Tr. 73).  On June 25, 2015, Plaintiff filed the present claim, alleging an onset date of March 8, 2014, due to back pain, depression, anxiety, hypertension, and neuropathy.  His application was denied at the administrative level, and he thereafter requested a hearing before an Administrative Law Judge ("ALJ").  On October 5, 2017, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert ("VE").  On January 11, 2018, the ALJ issued a decision finding that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that exist in significant numbers in the national economy and was thus not disabled under the Act.  The ALJ found that Plaintiff had the RFC to perform light work as defined by the Commissioner's regulations, except for the following limitations:

> [H]e cannot climb ladders, ropes or scaffolds.  The claimant can occasionally climb ramps and stairs, stoop, crouch and crawl.  The claimant can occasionally reach, push and pull overhead bilaterally but has no other reaching limitations.  The claimant can frequently engage in handling and fingering.  He cannot work at unprotected heights or around moving mechanical parts or other such hazards and is limited to performing simple routine tasks but not at a fast pace such as an assembly line.  The claimant can occasionally interact with co-workers and the public.

---

[2]  The Court also notes the clarifications supplied in Defendant's Response to Plaintiff's Statement of Facts.  ECF No. 18-1.

Tr. 12.

The ALJ next found that Plaintiff could perform certain light unskilled jobs listed in the Dictionary of Occupational Titles ("DOT") (e.g., janitorial jobs, retail stocking and shelving positions, dining room attendant), which the VE had testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. On August 23, 2018, the Appeals Council denied Plaintiff's request for review. Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision is the final decision of the Commissioner for this Court's review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the whole record because the ALJ failed to properly weigh the medical evidence in arriving at the RFC. More specifically, Plaintiff contends that the ALJ failed to give sufficient weight to the opinion of his treating physician.

**The ALJ's Decision (Tr. 12-25)**

The ALJ found that Plaintiff has the following severe impairments: anxiety, depression, cervicalgia, bilateral ulnar neuropathy, hypertension, and lumbago with sciatica on the right side. However, she found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the

Commissioner's regulations.[3] Plaintiff does not challenge the ALJ's decision with respect to mental impairments. As such, the Court will focus its review on the ALJ's findings and conclusions with respect to Plaintiff's physical impairments. As relevant to that inquiry, the ALJ reviewed and summarized the evidence as follows.

Plaintiff testified that he can no longer work because of continuous pain from his skull down to his feet. He has numbness in his hands and feet and gets migraines two to three times per week. He takes Hydrocodone and Tramadol. He previously received injections and more recently uses a stimulator. He can sit and stand for 15 minutes but spends much of the day lying down. He uses a cane and can walk up to 150 feet on a good day. He lives alone and can drive. His mother helps him with house cleaning. He can shop for groceries. The ALJ found that, although Plaintiff's impairments could reasonably be expected to cause his symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.

The ALJ noted that Plaintiff has a history of back pain from a neck injury in 2010 and a motorcycle accident in 2012. Plaintiff is an established patient of Dr. Patrick O'Hara, a general practitioner. In July 2015, Dr. O'Hara diagnosed Plaintiff with low back pain and cervicalgia and prescribed Meloxicam[4] and Tylenol. A CT scan in

---

[3]   The ALJ further noted that Plaintiff has additional medically determinable impairments of gastroesophageal reflux disease and obesity. The ALJ found these impairments non-severe, and Plaintiff does not challenge these findings.

[4]   Meloxicam is a non-steroidal anti-inflammatory drug (NSAID) used to treat pain and inflammation caused by rheumatoid arthritis and osteoarthritis.

4

September 2015 revealed mild facet arthropathy. An MRI in January 2016 revealed a 2mm protrusion at C2-3, bulging and herniation at C3-4, and bulging at C4-5 and C5-6, but no cervical compression. An MRI in February 2016 revealed degenerative disc changes at L4-5 and L5-S1. An x-ray and CT scan in March 2016 revealed no cervical compression, prevertebral soft tissue thickening, or decrease in diskal height but subtle grade I anterolisthesis, probably pseudosubluxation at C2-3. An electromyography in April 2016 revealed evidence of a bilateral ulnar neuropathy, chronic denervation at C6-7, and no active denervation in either upper extremity.

In July 2016, Dr. O'Hara noted that Plaintiff's physical examination was within normal limits, and a neurosurgeon did not think that Plaintiff's herniated cervical disc warranted surgery. It was also noted that Plaintiff chose to discontinue Gabapentin for his peripheral neuropathy because the side effects were worse than the symptoms. In September 2016, Plaintiff was using a cane and taking Tramadol and Hydrocodone for pain. Plaintiff reported pain and stiffness, but no physical abnormalities were noted. In January 2017, Plaintiff reported sharp pain in his low back. He continued with medication and also received injections. A physical exam revealed tenderness and pain with flexion of the left hip. Dr. O'Hara diagnosed low back pain. Another exam in May 2017 showed no changes from prior visits.

Plaintiff also treated with Dr. Andrew Walker, a pain management specialist. Plaintiff began receiving lumbar epidural steroid injections in June 2016. Dr. Walker noted that Plaintiff had an antalgic gait and tender points in his low back, but no FABER or compression signs. In August 2016, Dr. Walker diagnosed Plaintiff with cervical and

5

lumbar radiculopathy and administered another injection. As of September 2017, Plaintiff was to try a TENS unit and possibly an external stimulator.

Next, the ALJ referenced a medical source statement ("MSS") completed by Dr. O'Hara in July 2016 indicating that Plaintiff had cervicalgia and radicular pain in his legs, paresthesia in his feet and hands, and headaches. Tr. 333-335. The pain was normally 5-6 out of 10 and more acute with movement. Dr. O'Hara opined that Plaintiff could rarely lift and never carry 10 pounds; could never twist stoop, crawl, or climb, and rarely crouch; could rarely reach, handle, finger, and feel; could sit 10 minutes at a time and less than 2 hours in an 8-hour workday; could stand 15 minutes at a time and less than 2 hours in an 8-hour workday; would need to shift positions and take unscheduled 30-minute breaks; needs a cane or other assistive device; would need to elevate his legs when sitting; and would likely be off task 25% of the time (but 50% according to Plaintiff). *Id*. The ALJ also referenced two disability evaluation forms completed in February 2014 and October 2015 where the physician, whose signature is illegible, diagnosed Plaintiff with chronic back pain. Tr. 526-529.

Based on the whole record, the ALJ concluded that the evidence did not support Plaintiff's claim of severe impairment and resulting limitations precluding all work activity. The ALJ reasoned that Plaintiff's back and neck pain had been treated conservatively with medication and injections; he was not a candidate for surgery and had not engaged in physical therapy since 2010; and overall the evidence lacked signs typically associated with severe musculoskeletal pain, such as muscle atrophy, frequent spasms, neurological deficits or nerve root impingement, significantly abnormal x-rays or

6

diagnostics, positive straight leg raises, or persistent inflammation. Other than tenderness and an antalgic gait, Plaintiff's examinations were basically within normal limits, and his cane was never actually prescribed by a physician. The ALJ further noted, with respect to the numbness and tingling in Plaintiff's hands, that the results of his electromyography (showing bilateral ulnar neuropathy graded borderline on the right and moderate on the left, with no active denervation in either upper extremity) did not support his allegations of having severe problems using his hands.

With respect to Plaintiff's daily activities, the ALJ noted that Plaintiff lives alone independently, takes care of his needs, does chores and shopping with some help from his mother, and likes to draw and sketch as a hobby. From these activities, the ALJ concluded that any restriction in Plaintiff's activities was by choice and not a doctor's recommendation.

Regarding the opinion evidence as relevant to Plaintiff's physical limitations, the ALJ found that Dr. O'Hara's medical source statement imposing significant limitations on Plaintiff's ability to perform work-related activities was based on Plaintiff's reporting and not supported by medical evidence in the record, which consistently showed that Plaintiff's back impairment was no more than mild to moderate. The ALJ also referenced a state agency assessment by Dr. Mel Moore, who found Plaintiff's allegations only partially credible, as unsupported by medical evidence, and concluded that Plaintiff's degenerative disc disease did not warrant any RFC limitations. Tr. 96-98. The ALJ gave only partial weight to this conclusion, reasoning that Plaintiff's diagnostic

7

imaging and ongoing complaints and treatment show that his degenerative disc disease is severe.

Ultimately, the ALJ concluded that an RFC of light work, with the physical limitations previously described, was consistent with the evidence, and that Plaintiff could perform certain light unskilled jobs listed in the DOT (e.g., janitorial work, retail stocking and shelving, dining room attendant), which the VE had stated that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

In his brief before this Court, Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the whole record because the ALJ failed to properly weigh the medical opinions to arrive at an RFC supported by substantial evidence. Plaintiff contends that the record as a whole does not support an RFC for light work. Plaintiff asks that the ALJ's decision be reversed and remanded for a new hearing.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the

8

claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would

support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**RFC Finding and Weight of Medical Opinions**

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* "The ALJ is not required to accept every opinion by an examiner but must weigh all the evidence in the record." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "It is the ALJ's function to

resolve conflicts among the opinions of various treating and examining physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012).

Under the applicable social security regulations,[5] the opinion of a treating physician is "normally entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and the Commissioner "may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." *Id.* The regulations require that the ALJ give good reasons for the weight afforded to a treating physician's evaluation. *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005); 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff asserts that the ALJ failed to properly weigh the medical opinions in the record. The ALJ gave little weight to Dr. O'Hara's evaluation of Plaintiff's

---

[5] For claims filed before March 27, 2017, the regulations provide that if "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Social Security Administration] will give it controlling weight," and further provide that the Administration "will give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion." 20 C.F.R. § 404.1527.

For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c.

limitations because it was based on Plaintiff's subjective complaints and inconsistent with the objective medical evidence. Plaintiff argues that the ALJ's reasoning is erroneous in that (1) there is no evidence that Dr. O'Hara relied on Plaintiff's subjective reports and (2) the evidence does not support an RFC for light work. In support of his argument, Plaintiff cites numerous excerpts from the record documenting his back pain, decreased range of motion, antalgic gait, abnormalities revealed through imaging, and various treatments. Plaintiff asserts that the ALJ disregarded this evidence and substituted her own lay opinion for that of Dr. O'Hara without explaining how the evidence supported her conclusion. The Court does not agree with Plaintiff's characterization.

First, Dr. O'Hara's own MSS, noting that *Plaintiff reported* being off-task 50% of the time (Tr. 335), suggests that Dr. O'Hara did indeed rely on Plaintiff's input when completing the form. Additionally, Dr. O'Hara's own treatment notes recommending daily exercise contradict the restrictive limitations indicated on the MSS. This evidence, too, supports the ALJ's inference that Dr. O'Hara relied on Plaintiff's subjective complaints.

Second, the evidence does support an RFC for light work. The ALJ's decision reflects that she acknowledged and properly considered the evidence of Plaintiff's conditions, but she also considered other physical examination findings showing a steady gait, negative straight-leg raising, no deformities or scoliosis, no neck abnormalities, no hip tenderness, normal extremity findings with full range of motion, no focal deficits, intact sensation, and normal reflexes, coordination, and muscle strength. Tr. 21. The

ALJ noted that multiple diagnostic images did not support an allegation of total disability. Tr. 21. In September 2015, a lumbar CT showed only mild arthropathy with normal vertebral height, disc space, and alignment. Tr. 331. In January 2016, a cervical spine MRI showed 2-3mm herniations but no compression, antero- or retrolisthesis, malformation, or unilateral facet dislocation. Tr. 362-363. In February 2016, a lumbar spine MRI showed mild desiccation, herniation, and a moderate decrease in disc height but no compression, antero- or retrolisthesis, and no lumbar canal stenosis. Tr. 365-366. In March 2016, a cervical spine CT showed no disc bulges or herniations, no compression or antero- or retrolisthesis, no decrease in disc height, and no unilateral facet dislocation. Tr. 382-384. The ALJ reasoned that these diagnostics lacked indicators of neurological deficits or nerve root damage.

Additionally, the ALJ noted that Plaintiff consistently reported relief with medications and injections, he did not engage in physical therapy, and he was not a candidate for surgery. Tr. 21. *See, e.g., Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (reasoning that conservative treatment, management with medication, and lack of required surgical intervention supported RFC of medium work).

The ALJ further noted that Plaintiff was able to live and function independently, and any restriction in his activity was by choice and not a doctor's recommendation. Tr. 21-22. In fact, the record shows that Dr. O'Hara repeatedly counseled Plaintiff to engage in daily exercise. Tr. 400, 408, 420, 426. This belies not only Plaintiff's subjective claim of disability but also Dr. O'Hara's own opinion of Plaintiff's work restrictions. While a person's ability to engage in chores or hobbies does not demonstrate

13

an ability to work (*Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000)), it is proper for an ALJ to consider a claimant's personal activities for purposes of assessing the credibility of his claims of incapacity. *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (no error where ALJ discounted claimant's subjective complaints disabling pain where his activities and medication regimen suggested otherwise). "Credibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).[6] To be given controlling weight, a treating physician's opinion must be supported by objective medical evidence and not inconsistent with other evidence. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015.) The ALJ may discount a treating physician's opinion when internally inconsistent or when other assessments are supported by better evidence. *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). Here, Dr. O'Hara's opinion imposing significant limitations on Plaintiff's ability to work is not supported by the objective medical evidence, particularly diagnostic imaging, and is inconsistent with the doctor's own treatment notes.

The ALJ did not totally disregard Dr. O'Hara's opinion but gave good reasons for assigning little weight to his evaluation of Plaintiff's functional limitations. Plaintiff's suggestion that the ALJ committed reversible error simply by failing to weigh Dr. O'Hara's opinion in his favor ignores this Court's standard of review.

---

[6] Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective symptoms, and in any case Plaintiff's claim precedes the regulatory change.

## CONCLUSION

The ALJ's decision demonstrates that she considered Dr. O'Hara's opinion but assigned it minimal weight because it did not comport with Plaintiff's diagnostic imaging, his conservative treatment plan, and other medical evidence on the whole record. This is a proper exercise of the ALJ's discretion.

While the Court must take into account "evidence that both supports and detracts from the ALJ's decision, … as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision. *Chaney*, 812 F.3d at 676. On the present record, the Court concludes that the ALJ's decision was well within the available zone of choice. The ALJ's decision reflects that she considered the whole record, and her RFC determination is supported by substantial evidence therein.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 21st day of February, 2020.